# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

08-cv-01136-REB-MEH

RAJU BOPARDIKAR,

    Plaintiff,

v.

MORGAN STANLEY & COMPANY INCORPORATED,

    Defendants.

# FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

**Blackburn, J.**

    This matter came before me on July 17, 2008, for a summary trial to the court under 9 U.S.C. § 4, part of the Federal Arbitration Act (FAA).

    Having judicially noticed all relevant adjudicative facts in the file and record of this case *pro tanto*; having considered and accepted the stipulations of the parties; having considered the evidence educed in its various forms;[1] having determined the credibility of the witnesses; having weighed the evidence; having considered the reasons stated, arguments advanced, and the authorities cited by the parties in written and oral form; and being otherwise sufficiently advised, I enter the following findings of fact established by a preponderance of the evidence, conclusions of law, and orders.[2]

---

[1] I will refer to exhibits admitted at the summary trial by their letter designation.

[2] Any finding of fact more properly deemed a conclusion of law, or any conclusion of law more properly deemed a finding of fact, shall be as more properly characterized.

## FINDINGS OF FACT

1. On or about September 11, 2000, the plaintiff, Raju Bopardikar, and the defendant, Morgan Stanley and Company Incorporated, simultaneously entered into two written agreements. One agreement is titled "Client Agreement," and the second agreement is titled "Margin Agreement." *Exhibit G* (Client Agreement); *Exhibit H* (Margin Agreement).

2. Morgan Stanley drafted both the Client Agreement and the Margin Agreement.

3. The first paragraph of the Client Agreement, which paragraph is not numbered, and the first paragraph of the Margin Agreement, which paragraph is not numbered, both provide that the terms "you" and "your," as used in the agreements, refer to Morgan Stanley.

4. The first paragraph of the Client Agreement, which paragraph is not numbered, provides in part:

> To the extent not in consistent (sic) with any margin agreement executed by the Undersigned [Bopardikar], this agreement is in addition to and supplements any such margin agreement which shall remain in full force and effect.

5. Paragraph 15 of the Margin Agreement provides in part:

> To the extent this agreement is inconsistent with any other agreement between you [Morgan Stanley] and the undersigned [Bopardikar], the provisions of this agreement [the Margin Agreement] shall govern.

6. The paragraph numbered 12 in the Margin Agreement provides relevantly:

> ANY DISPUTE THE UNDERSIGNED [Bopardikar] MAY HAVE WITH YOU [Morgan Stanley] ARISING OUT OF, RELATING TO OR IN CONNECTION WITH YOUR BUSINESS, ANY TRANSACTION OR CONTRACT BETWEEN US OR THIS AGREEMENT SHALL BE DETERMINED BY ARBITRATION OR LITIGATION IN COURT AT THE ELECTION OF THE UNDERSIGNED [Bopardikar]. REGARDLESS OF

WHETHER THE UNDERSIGNED [Bopardikar] CHOOSES TO PROCEED
BY ARBITRATION OR LITIGATION, THE UNDERSIGNED  [Bopardikar]
AND YOU [Morgan Stanley] AGREE TO FOLLOW THE PROCEDURES,
AND ABIDE BY THE REQUIREMENTS, LISTED IN PARAGRAPHS 13,
14, AND 17, BELOW.

I will refer to this provision, and the very similar provision in paragraph 15 of the Client Agreement, quoted below, as the "Election Provision."

7.  Paragraph 13 of the Margin Agreement specifies procedures to be used in arbitration, if arbitration is selected, and paragraph 14 provides procedures to be used in litigation, if litigation is selected.

8.  Paragraph 15 in the Client Agreement provides in part:

ANY DISPUTE THE UNDERSIGNED [Bopardikar] MAY HAVE WITH
YOU [Morgan Stanley] ARISING OUT OF, RELATING TO OR IN
CONNECTION WITH THE UNDERSIGNED'S [Bopardikar's] BUSINESS
AND ANY TRANSACTION OR CONTRACT BETWEEN THE PARTIES
TO THIS AGREEMENT SHALL BE DETERMINED BY ARBITRATION OR
LITIGATION IN COURT AT THE ELECTION OF THE UNDERSIGNED
[Bopardikar].  REGARDLESS OF WHETHER THE UNDERSIGNED
[Bopardikar] CHOOSES TO PROCEED BY ARBITRATION OR
LITIGATION, YOU [Morgan Stanley] AND THE UNDERSIGNED
[Bopardikar] AGREE TO FOLLOW THE PROCEDURES, AND ABIDE BY
THE REQUIREMENTS, LISTED BELOW.

[Listing of 5 bullet points that concern arbitration only.  The second bullet
point provides that the "parties are waiving their right to seek remedies in
court, including the right to jury trial."]

THE UNDERSIGNED [Bopardikar] AGREES THAT ALL
CONTROVERSIES WHICH MAY ARISE BETWEEN THE
UNDERSIGNED [Bopardikar] AND YOU [Morgan Stanley], INCLUDING
BUT NOT LIMITED TO THOSE INVOLVING ANY TRANSACTION OR
THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR
ANY OTHER AGREEMENT BETWEEN THE PARTIES, WHETHER
ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE
HEREOF, SHALL BE DETERMINED BY ARBITRATION.

I will refer to the final eight lines of paragraph15 of the Client Agreement, as quoted above, as the "Mandatory Arbitration Provision."  The first 11 lines of paragraph 15 of

the Client Agreement, as quoted above, contain essentially the same terms as the Election Provision of paragraph 12 of the Margin Agreement.

9. On April 18, 2007, Morgan Stanley sent a letter to Bopardikar demanding repayment by Bopardikar of a loan Morgan Stanley says it made to Bopardikar. Exhibit A. Morgan Stanley contends it made the loan to Bopardikar in connection with the Client Agreement and Margin Agreement. In the April 18, 2007, letter Morgan Stanley demanded payment of 137,966.15 dollars.

10. On November 20, 2007, Morgan Stanley filed a Statement of Claim in arbitration against Bopardikar. *Exhibit B*, pp. 1 - 6; *Exhibit I* (Affidavit of Wendy R. Robinson), ¶ 2. The Statement of Claim was filed with the Dispute Resolution Department of the Financial Industry Regulatory Authority (FINRA). *Id*. FINRA served the Statement of Claim on Bopardikar by U.S. mail on November 26, 2007. *Exhibit I*, ¶ 3. A process server served Bopardikar with the Statement of Claims and additional documents on January 20, 2008. *Id*. On or about January 22, 2008, and February 22, 2008, FINRA mailed to Bopardikar additional documents concerning the arbitration proceeding. *Id.*

11. On February 22, 2008, a case information sheet concerning the arbitration was sent to the parties, including Bopardikar. Exhibit E, pp. 6 - 8. The final page of this document indicates that Bopardikar had not filed an answer or a uniform submission agreement in the arbitration proceeding. *Id*., p. 8. There is no evidence that Bopardikar filed any documents of any kind in the arbitration proceeding.

12. On March 31, 2008, Bopardikar participated in a telephonic pre-hearing conference before a three-person arbitration panel. *Id*., ¶ 4.

13. At the March 31, 2008, pre-hearing conference, Bopardikar agreed that he

was available for an arbitration hearing on June 30 and July 1, 2008. *Id.*, ¶ 13. Bopardikar indicated also that he did not want to retain an attorney before agreeing to these hearing dates. *Id*. The Chairman of the arbitration panel cautioned Bopardikar that he should not expect a continuance of the hearing dates if he later decided to retain an attorney. *Id.*, ¶ 14. To the extent Bopardikar's testimony at the summary trial is inconsistent with the description of the March 31, 2008, pre-hearing conference contained in this paragraph, I find that the testimony and affidavit of Wendy R. Robinson is more credible than the testimony of Bopardikar concerning these facts.

    14. Bopardikar did not state to anyone involved with the arbitration proceeding any objection to the arbitration proceeding prior to or during the March 31, 2008, pre-hearing conference.

    15. There is no evidence that Bopardikar actively participated in the arbitration proceedings in any way, aside from his attendance by telephone at the March 31, 2008, pre-hearing conference.

    16. On June 9, 2008, Bopardikar filed this civil action in federal court. Bopardikar seeks, *inter alia*, a declaratory judgment declaring that Bopardikar is not required to resolve Morgan Stanley's claim against him in arbitration.

**CONCLUSIONS OF LAW**

    1. I have personal jurisdiction over the parties to this action. I have subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and, to the extent Bopardikar's Complaint might be read to assert claims under Colorado law, under 28 U.S.C. 1332 (diversity).

    2. Under 28 U.S.C. § 1391(a)(2), venue is proper in the United States District Court for the District of Colorado concerning Bopardikar's claim seeking a judgment

declaring that he is not required to resolve Morgan Stanley's claim against him in arbitration. I incorporate by reference my conclusions on this venue issue as stated in my order denying the defendant's motion to dismiss. *Order Denying Motion To Dismiss* [#16], entered July 1, 2008, pp. 3 - 4.

3. In his Complaint [#1] filed May 29, 2008, Bopardikar seeks also a judgment declaring that Bopardikar "is not indebted to Defendant as claimed in said arbitration proceeding." *Complaint* [#1], p. 3. Venue for this claim is not proper in the District of Colorado because both the Client Agreement and the Margin Agreement provide that litigation of disputes between the parties, as defined in the agreements, must be filed in the State of New York. Forum selection clauses such as those contained in the Margin Agreement and the Client Agreement are *prima facie* valid and should be enforced. **Milk "N' More, Inc. v. Beavert**, 963 F.2d 1342, 1346 (10th Cir. 1992). Thus, this claim must be dismissed for improper venue. Fed.R.Civ.P. 12(b)(3).

4. Bopardikar seeks relief, *inter alia*, under 9 U.S.C. § 4, and the July 17, 2008, summary trial concerned this claim for relief. The fundamental issue in a proceeding under § 4 is whether there is a valid written agreement to arbitrate. If there is a valid agreement to arbitrate, then the court must direct the parties to proceed to arbitration. Conversely, if there is not a valid agreement to arbitrate, then the court cannot require arbitration.

5. Under 28 U.S.C. § 2201, I may enter a judgment declaring the rights of the parties to the extent Bopardikar seeks a determination of his obligation to resolve Morgan Stanley's claim against him in arbitration. Bopardikar seeks such a declaratory judgment.

6. It is undisputed that the Election Provision of the Margin Agreement can ripen

into a binding agreement to arbitrate if Bopardikar elects arbitration. In this case, however, Morgan Stanley relies on the Mandatory Arbitration provision of the Client Agreement as the basis for its assertion that Bopardikar is required to proceed to arbitration even though Bopardikar has not elected arbitration. My evaluation of the effect of the parties' written agreements is limited to a determination of whether or not Morgan Stanley can require Bopardikar to resolve Morgan Stanley's claim in arbitration, under the Mandatory Arbitration provision of the Client Agreement, without Bopardikar's consent to arbitration. In my further conclusions of law, any reference to an agreement to arbitrate based on the parties' written contracts concerns Morgan Stanley's claim that Bopardikar is required to proceed to arbitration under the Mandatory Arbitration provision of the Client Agreement.

7. At the opening of the summary trial, I concluded tentatively that the plaintiff bears the burden of proof on the issue of the existence or non-existence of a written agreement to arbitrate. On further reflection, I conclude that the defendant bears the burden of proof on the question of the existence of a written agreement to arbitrate. A party seeking to prosecute or defend a civil claim has a right to pursue the party's claim or defense in a court of law, unless a valid agreement to arbitrate that claim alters that right. "(A)rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." **AT & T Technologies, Inc. v. Communications Workers of America**, 475 U.S. 643, 648 (1986) (quotation and citations omitted). An agreement to arbitrate alters the status quo. Even though formally aligned as a defendant, a party seeking to require another to arbitrate a claim must bear the burden of proving an agreement to arbitrate because proof of such an agreement alters the status quo presumption that the dispute will be resolved in a court

of law.

8. On the current record in this case, I conclude that the final result would be the same whether the plaintiff bears the burden of proof or the defendant bears the burden of proof on the issue of the existence or non-existence of a written agreement that requires Bopardikar to arbitrate.

9. Morgan Stanley asserts that even if there is not a valid written agreement that requires Bopardikar to arbitrate without his consent, Bopardikar effectively has waived his right to proceed in court, and / or he has effectively agreed to arbitration of Morgan Stanley's claim against him. This claim is based on Morgan Stanley's assertion that Bopardikar effectively agreed to arbitrate, or effectively waived his right to proceed in a court of law, via Bopardikar's failure to object to the arbitration proceedings and his participation in the March 31, 2008, pre-hearing conference. I conclude that this claim is in the nature of an affirmative defense or counterclaim, and, thus, I conclude that Morgan Stanley bears the burden of proof on this affirmative defense or counterclaim.

10. This case proceeded to summary trial under 9 U.S.C. § 4 without the filing of a formal answer by the defendant. Therefore, the defendant has not filed a pleading that outlines precisely the posture of its claim of implied agreement, waiver, or consent. Given the record in this case, and the statements of defense counsel during the summary trial, I conclude that the defendant sought resolution of its claim of implied agreement, waiver, or consent in the summary trial.

11. Under the terms of both the Client Agreement and the Margin Agreement, the terms of the Margin Agreement are controlling to the extent the terms of the Client Agreement are inconsistent with the terms of the Margin Agreement.

12. The Mandatory Arbitration Provision, that portion of paragraph 15 of the

Client Agreement which provides that "ALL CONTROVERSIES WHICH MAY ARISE BETWEEN" Bopardikar and Morgan Stanley concerning any transaction between the parties or the contracts between the parties "SHALL BE DETERMINED BY ARBITRATION," contradicts directly and irreconcilably the Election Provision at paragraph 12 of the Margin Agreement, which provides that all such disputes "SHALL BE DETERMINED BY ARBITRATION OR LITIGATION IN COURT AT THE ELECTION OF THE UNDERSIGNED [Bopardikar]." The Mandatory Arbitration provision of the Client Agreement is inconsistent with the Election Provision of the Margin Agreement. These two provisions cannot be reconciled in any rational way.

13. Morgan Stanley argued that the Election Provisions in both the Client Agreement and the Margin Agreement can be harmonized with the Mandatory Arbitration Provision of the Client Agreement. Morgan Stanley proposes that the two provisions be read together to provide that if Morgan Stanley first initiates proceedings on a dispute, then arbitration is mandatory, but if Bopardikar first initiates proceedings on a dispute, then Bopardikar has the option of choosing between arbitration and litigation. I reject this reading of the contracts because it conflicts with the plain language of the contracts. Further, even if I accepted this construction of the Client Agreement, the only agreement that includes both the Mandatory Arbitration Provision and the Election Provision, such a reading still contradicts directly the controlling terms of the Margin Agreement. The Margin Agreement provides, in essence, that all disputes between the parties "SHALL BE DETERMINED BY ARBITRATION OR LITIGATION IN COURT AT THE ELECTION OF" Bopardikar. Any provision in the Client Agreement that purports to limit Bopardikar's right to elect arbitration or litigation necessarily contradicts and is inconsistent with the provisions of the controlling Margin

Agreement that give Bopardikar the right to this election as to <u>any</u> dispute that may arise between Bopardikar and Morgan Stanley under the agreements.

14. The Mandatory Arbitration Provision of the Client Agreement is not enforceable because the Mandatory Arbitration Provision is inconsistent with the Election Provision of the Margin Agreement. Under the plain terms of both agreements, the terms of the Margin Agreement govern to the extent the terms of the Client Agreement are inconsistent with the terms of the Margin Agreement.

15. There is no valid written agreement between Morgan Stanley and Bopardikar that requires Bopardikar to proceed to arbitration without Bopardikar's consent.

16. Morgan Stanley has failed to demonstrate by a preponderance of the evidence that there exists a valid written agreement between Morgan Stanley and Bopardikar that requires Bopardikar to proceed to arbitration without Bopardikar's consent to arbitration.

17. Alternatively, Bopardikar has demonstrated by a preponderance of the evidence that there is not a valid written agreement between Morgan Stanley and Bopardikar that requires Bopardikar to proceed to arbitration without Bopardikar's consent to arbitration.

18. Bopardikar's minimal participation in the preliminary arbitration proceedings is not sufficient to demonstrate an intent by Bopardikar to agree to arbitration of Morgan Stanley's claim, an intent by Bopardikar to waive his right to have Morgan Stanley's claim against him resolved in a court of law, or a consent to arbitration by Bopardikar.

19. An agreement to arbitrate may be implied from a party's conduct. **See, e.g., Gvozdenovic v. United Air Lines, Inc.**, 933 F.2d 1100, 1105 (2nd Cir. 1991), **cert.**

*denied*, 502 U.S. 910 (1991) (selection of representative committee and counsel, use of funds designated to fund arbitration proceedings, and vigorous argument to arbitrator at hearing on substantive issue manifested clear intent to arbitrate issue).

20. A party cannot "await the outcome [of an arbitration] and then later argue that the arbitrator lacked authority to decide the matter." ***Lewis v. Circuit City Stores, Inc.***, 500 F.3d 1140, 1149 (10th Cir. 2007) (quotation and citation omitted). If "a party 'vigorously participated in the arbitration,' he may waive any objection to arbitration." *Id.* n. 10 (citing **Hicks v. Bank of Am., N.A.**, 218 Fed.Appx. 739, 746 (10th Cir.2007) (unpublished)).

21. Minimal participation in arbitration proceedings, however, is not sufficient to demonstrate an intent to agree to arbitrate a dispute, or an intent to waive a party's right to have the dispute resolved in a court of law. ***Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home and Allied Services Union, S.E.I.U., AFL-CIO***, 788 F.2d 894, 899 (2nd Cir. 1986) (party's minimal participation in arbitration proceedings, which participation was directed primarily at efforts to postpone and delay proceedings, insufficient to demonstrate waiver of right to seek stay of arbitration).

22. I conclude as a matter of law that Bopardikar's receipt of various documents concerning the arbitration and his participation in the March 31, 2008, pre-hearing conference are not sufficient to demonstrate an intent by Bopardikar to agree to arbitration of Morgan Stanley's claim, an intent by Bopardikar to waive his right to have Morgan Stanley's claim against him resolved in a court of law, or a consent to arbitration by Bopardikar. I conclude further that no other actions taken by Bopardikar demonstrate an intent to agree to arbitration of Morgan Stanley's claim, an intent to waive his right to have Morgan Stanley's claim against him resolved in a court of law,

or a consent to arbitration by Bopardikar.

23. Morgan Stanley has failed to demonstrate by a preponderance of the evidence that Bopardikar's minimal participation in the arbitration proceedings initiated by Morgan Stanley establishes an implied agreement by Bopardikar to arbitrate Morgan Stanley's claim, a waiver by Bopardikar of his right to have this claim resolved in a court of law, or a consent to arbitration by Bopardikar.

**THEREFORE, IT IS ORDERED** as follows:

1. That on the plaintiff's claim under 9 U.S.C. § 4 and under 28 U.S.C. § 2201, in which Bopardikar seeks a declaratory judgment declaring that Bopardikar is not required to resolve Morgan Stanley's claim against him in arbitration absent Bopardikar's consent, **JUDGMENT SHALL ENTER** for the plaintiff, Raju Bopardikar, and against the defendant, Morgan Stanley and Company Incorporated;

2. That **JUDGMENT SHALL ENTER** under 28 U.S.C. § 2201 declaring that there is not a valid written agreement between the plaintiff, Raju Bopardikar, and the defendant, Morgan Stanley and Company Incorporated, that requires Bopardikar to resolve Morgan Stanley's claim against Bopardikar in arbitration absent Bopardikar's consent to arbitration;

3. That **JUDGMENT SHALL ENTER** for the plaintiff, Raju Bopardikar, and against the defendant, Morgan Stanley and Company Incorporated, on Morgan Stanley's claim, in the nature of an affirmative defense or counterclaim, that the plaintiff, Raju Bopardikar, has taken actions that constitute an implied agreement by Bopardikar to resolve Morgan Stanley's claim against Bopardikar in arbitration;

4. That **JUDGMENT SHALL ENTER** for the plaintiff, Raju Bopardikar, and against the defendant, Morgan Stanley and Company Incorporated, on Morgan

Stanley's claim, in the nature of an affirmative defense or counterclaim, that the plaintiff, Raju Bopardikar, has taken actions that constitute a consent to arbitration or a waiver by Bopardikar of his right to resolve Morgan Stanley's claim against Bopardikar in a court of law;

     5. That under Fed.R.Civ.P. 12(b)(3), plaintiff Raju Bopardikar's claim for a judgment declaring that Bopardikar "is not indebted to Defendant as claimed in said arbitration proceeding," *Complaint* [#1], p. 3, is **DISMISSED** for lack of proper venue;

     6. That the plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to FED.R.CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

     Dated July 21, 2008, at Denver, Colorado.

                                          **BY THE COURT:**

                                          **s/ Robert E. Blackburn**
                                          **Robert E. Blackburn**
                                          **United States District Judge**